DEPARTMENT OF FINANCIAL INSTITUTIONS *v.* RANDALL, ADMINISTRATRIX

[No. 27,338. Filed February 5, 1940.]

*Walter D. Stump,* of Auburn, for appellant.

*Clarence E. McClintock,* and *Dan M. Ling,* of Auburn, for appellee.

FANSLER, J.—This is an appeal from an order overruling exceptions to, and approving, the final report of an administratrix.

The facts are not in dispute. William H. Randall was the president of the St. Joe Valley Bank when it was closed as insolvent. Shortly thereafter he died. His widow, Sarah Jane Randall, was appointed administratrix of his estate. At the time of her appointment she was physically and mentally prostrated, and continued in bad health, and was not able to appear as a witness at the hearing on the exceptions to the report.

Shortly after Mr. Randall's death, Mrs. Randall was told that he owed the bank a note of $1,000. At the time of Mr. Randall's death the bank was indebted to Mrs. Randall in the sum of $1,000, evidenced by two certificates of deposit of $500 each. Upon being informed of the $1,000 note, she surrendered these two certificates of deposit, and gave some cash of her own, in payment of the note, which was surrendered to her. She was also the owner of some pumps, valued at $392.

Mrs. Randall's son and her attorney, who were not familiar with the facts concerning the certificates of deposit and the pumps, prepared her inventory as administratrix, which she signed. In this inventory they listed the pumps, valued at $392, and the two $500 certificates of deposit, as property of the estate. Afterward the appellant filed a claim against the estate for $2,500, based upon Mr. Randall's assessment liability as the owner of $2,500 worth of capital stock in the bank. This claim was allowed. Afterward the administratrix filed a final report, setting up the facts above recited and charging herself only with the property which belonged to Mr. Randall at his death. In the

original inventory she was charged with personal property of the value of $2,342. In her report she took credit for the certificates of deposit and the pumps, which reduced the personal property inventory to $950. She showed in the report that her husband died seized of real estate appraised for taxation at $1,400, two-thirds of which was liable to be made assets for the payment of debts, and that the total value of the estate, including the real estate, was $1,883.33. She showed that she had expended $1,241.41 in the payment of preferred claims, leaving a balance available for general claims of $641.92.

The report then recites: "That at the time of his death the decedent was indebted upon his promissory note to the St. Joe Valley Bank in the amount of $1,000.00, and that the aforesaid balance of $641.92, together with other moneys advanced by this administratrix personally, have been paid to said St. Joe Valley Bank in full satisfaction of said debt; that as herein shown, no funds remain for application upon the claim allowed by this Court in favor of said St. Joe Valley Bank on bank stock liability."

It is seen that the administratrix treated the payment of the $1,000 note as having been made with the funds of the estate to the extent that there were funds ultimately available in the estate. We know of no reason why an administrator may not advance his own funds to pay debts of the estate, or why he should not be reimbursed out of the estate if he pays out of his own funds by error.

The appellant filed exceptions to this report, and moved that an order be made requiring the administratrix to settle the estate as insolvent, and to offer the real estate for sale. Evidence was heard. It was proven beyond controversy that Mrs. Randall was the

owner of the certificates of deposit and that they stood in her name; that she was the owner of the pumps; that she was prostrated and unable to look after the business of the estate; and that her son, with the assistance of her attorney, prepared the inventory, and erroneously inventoried the items in question because of ignorance of the facts; that the real estate which she treats in the report as being worth $1,400, the amount for which it was appraised for taxation, was worth not to exceed $1,000. It was also proven that depositors in the bank had been paid 85 per cent upon their claims, and that therefore the two certificates of deposit were worth, at the time of their surrender, $850. It appears therefore that if Mrs. Randall had not paid the note at the bank, and the inventory had been properly made in the first instance, and the real estate had been appraised and sold at the highest price indicated by the evidence, there would have remained for general creditors, not $641.92, but $375.26, less the costs involved in selling the real estate; that, instead of receiving the value of the certificates of deposit, which was $850 plus whatever cash Mrs. Randall paid, the bank would have received $375.26, less the costs of selling the real estate. In other words, the appellant received approximately $500 more than it was entitled to, principally at the expense of Mrs. Randall.

The statutes providing for the settlement of estates as insolvent, and for the advertisement and sale of real estate to pay debts, are to be given a practical 2. construction. It cannot have been the legislative intention that they were to be blindly followed in the settlement of small estates where it clearly appears beyond controversy that to do so would work an injury upon creditors as well as heirs. In this case it is clear that if the real estate had been sold for approximately

twice what the evidence showed it to be worth, and the costs of the sale deducted, the complaining creditor would have received no more than by the method of settlement adopted. And as to the insolvency proceedings, the appellant is not injured. Any injury that might result would involve other creditors, if others there be. To burden the estate with the expense of such proceedings under the circumstances of this estate, would work an injury and accomplish no good.

The decision of the trial court is so clearly right that it is difficult to understand why it is seriously questioned.

Judgment affirmed.

NOTE.—Reported in 24 N. E. (2d) 1000.